[Cite as *Tramontana v. Vermilion Fish & Game*, 2015-Ohio-3301.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
ERIE COUNTY

Marc Tramontana, etc., et al.                     Court of Appeals No. E-14-127

    Appellants                                    Trial Court No. 2012-CV-0921

v.

Vermilion Fish and Game, et al.              **DECISION AND JUDGMENT**

    Appellees                                     Decided:  August 14, 2015

* * * * *

Daniel J. Gibbons, for appellants.

Kevin J. Zeiher and Allen C. Tittle, for appellee Vermilion Fish
and Game Association.

Kevin J. Baxter, Erie County Prosecuting Attorney, and
Jason R. Hinners, Assistant Prosecuting Attorney, Vermilion
Township Board of Zoning Appeals.

* * * * *

**JENSEN, J.**

{¶ 1} Plaintiffs-appellants, Marc and Allison Tramontana, individually and on

behalf of their minor child, appeal the October 22, 2014 judgment of the Erie County

Court of Common Pleas which affirmed the decision of defendant-appellee, Vermilion Township Board of Zoning Appeals ("BZA") granting a conditional use permit ("CUP") to defendant-appellee, Vermilion Fish and Game ("VFG").[1] For the reasons that follow, we find that the BZA's decision was not a final appealable order.

## I. Background

## A. The Dispute

{¶ 2} VFG is located at 13617 Thompson Road in Vermilion, Erie County, Ohio. It was founded in 1939 as a facility dedicated to the conservation of fish and wildlife. In the 1950s it established a 100-yard shooting range, which it expanded to 300 yards with land it acquired in the early 1970s. That expansion apparently began in 1997 or 1998, but was not completed until 2000 or 2001.[2]

{¶ 3} The Tramontanas' home, which they purchased in 1999, is located on Briar Lane in Vermilion Township. It abuts VFG. The firing position on the 300-yard shooting range is situated 300 feet from their home. In 2009, the Tramontanas, along with neighbor Eupha Kostyo, brought suit against VFG and Vermilion Township in the Erie County Court of Common Pleas. In that suit, captioned 2009-CV-0826, they sought damages and injunctive relief for physical, emotional, and financial harm allegedly

---

[1] The notice of appeal filed in this court also lists Eupha Kostyo as an appellant, but appellants' briefs reference only the Tramontanas. Kostyo appears to have been a party to the appeal in the trial court. We see no indication that she dismissed that appeal, nevertheless, we refer only to the Tramontanas in this decision.

[2] The record is not entirely clear with respect to these dates.

2.

caused by VFG's operation of the 300-yard shooting range. Specifically, they claimed that the proximity of the shooting range to residential property posed danger to nearby homeowners because of the absence of protections against stray or ricocheting bullets and due to the intensity of the noise produced, and that environmental hazards to the land were not being addressed by VFG. They alleged that they had suffered hearing loss, headaches, anxiety, and that their property values had decreased. They argued that the land on which the shooting range is situated was zoned for agricultural use and that the 300-yard shooting range was an expansion and relocation of a non-conforming use of the property. They also contended that deed restrictions on the property required that it be used as a fish and game association and prohibited commercial use of the property.

{¶ 4} On July 20, 2012, the trial court granted partial summary judgment in favor of the Tramontanas and Kostyo and agreed that VFG's use and operation of the property as a 300-yard shooting range was the expansion and relocation of a non-conforming use. It ordered VFG to cease operating the 300-yard shooting range unless it obtained a variance from the BZA.

{¶ 5} VFG applied for a variance, as well as a CUP, on October 23, 2012. The BZA set the matter for a hearing to take place on November 19, 2012. The Tramontanas received notice of that hearing on November 6, 2012. On November 14, 2012, they asked the BZA to continue the hearing because Mr. Tramontana and his attorney were unavailable on the hearing date, they were awaiting responses to public records requests, and they needed additional time to prepare. They also asked the BZA to recuse itself

3.

because of an alleged conflict of interest which existed as a result of the litigation pending against it, and because some BZA board members or their families likely had been members of VFG or had used the shooting range at some point.

{¶ 6} All but one of BZA's members declined to recuse themselves, and the BZA denied the Tramontanas' request for a continuance. As far as the records, the Tramontanas had sought a copy of VFG's entire CUP application and copies of all CUPs issued and denied by the BZA since the zoning laws came into effect. The BZA provided VFG's CUP application, but it declined to produce copies of all CUPs issued or denied, claiming that the request was overbroad.

{¶ 7} The hearing went forward as scheduled. The Tramontanas and Kostyo were present with counsel. Several witnesses testified at that hearing, including Mrs. Tramontana, Kostyo, VFG's president and secretary, and owners of neighboring properties. The Tramontanas' counsel presented argument and offered a number of exhibits into evidence for the BZA's consideration, including medical records from several of the Tramontanas' medical providers, appraisals, shooting logs, VFG's amended bylaws broadening provisions for who could become a member of the club, and reports from acoustics experts documenting the level of noise and its potential effects.

{¶ 8} On December 11, 2012, the BZA issued findings of fact and conclusions of law. It denied VFG's application for a variance, but it granted it a CUP with the following conditions:

4.

a. The 300 Yard shooting range should remain in existing location.

b. No shooting on Sundays all year. From April 1st to September 30th, shooting from 12:00 noon to 6:00 p.m. From October 1st to March 30th, shooting from 11:00 a.m. to 5:00 p.m.

c. VFG must present design plan and specifications for a sound barrier to BZA for review and approval. VFG shall not use the 300 yard range until the sound barrier has been constructed per approved plans and specifications.

## B. The Trial Court Appeal

{¶ 9} The Tramontanas and Kostyo appealed the BZA decision to the Erie County Court of Common Pleas, arguing (1) the BZA erred in granting the CUP; (2) the BZA erred in denying the motion for a continuance of the hearing; and (3) the BZA erred in not recusing the entire board, or alternatively, certain board members. The trial court affirmed the BZA decision.

{¶ 10} As to the BZA's decision to grant the CUP, the court examined the provisions of Article 9.2 of Vermilion Township's Zoning Resolution which sets forth requirements for obtaining a CUP. Those provisions require that an applicant for a CUP present adequate evidence that use at the proposed location:

1. Is in fact a conditional use as established under the provisions of Article 9 and appears on the Schedule Of District Regulations adopted for the zoning district involved;

2. Will be in accordance with the general objectives or with any specific objective, of the County's Comprehensive and/or Zoning Resolution;

3. Will be designed, constructed, operated and maintained so as to be harmonious and appropriate in appearance with the existing or intended character of the general vicinity and that such use will not change the essential character of the same area;

4. Will not be hazardous or disturbing to existing or future neighboring uses;

5. Will be served adequately by essential public facilities and services such as highways, streets, police and fire protection, drainage structures, refuse disposal, water and sewer and school; or that persons or agencies responsible for the establishment of the proposed use shall be able to provide adequately any such services;

6. Will not create excessive additional requirements at public cost for public facilities and services and will not be detrimental to the economic welfare of the community;

7. Will not involve uses, activities, processes, materials, equipment and conditions of operation that will be detrimental to any person, property or the general welfare by reason of excessive production of traffic, noise, smoke, fumes, glare or odors;

6.

8. Will have vehicular approaches to the property which shall be so designed as not to create an interference with traffic on surrounding public thoroughfares;

9. Will not result in the destruction, loss, or damage of a natural, scenic, or historic feature of major importance.

{¶ 11} The BZA determined that items 1, 2, 3, 5, 6, 8, and 9 had been satisfied, and the court concluded that there was no compelling evidence requiring a different conclusion. Like the BZA had, it focused its attention on items 4 and 7. The conditions the BZA imposed in its order granting the CUP were aimed at satisfying those requirements.

{¶ 12} The trial court expressed that the issue was a close call. It recognized that the Tramontanas had provided a number of exhibits showing alleged adverse health effects and the diminution of property values resulting from VFG's operation of the shooting range, however, it remarked that it was difficult to distinguish the extent to which the harm resulted from the operation of the shooting range generally (which use was "grandfathered" and in conformity with the law) or from the expansion and relocation of the non-conforming use to include the 300-yard range. The court also observed that (1) the evidence submitted to the BZA had been generated for the underlying tort suit; (2) the experts' reports were conflicting; (3) the evidence was presented via written reports only, thereby preventing the BZA from making credibility determinations; and (4) some of the reports were inconclusive as to cause and effect. It

7.

concluded that the BZA was not required to accept the evidence advanced by the Tramontanas "at face value" and were free to find that "these bald reports" were not reliable, probative, or substantial. The court also took into account the measures the BZA was requiring of VFG to reduce the noise levels.

{¶ 13} As to the request to continue the hearing, the trial court recognized that whether to grant a continuance was within BZA's discretion. It observed that the Tramontanas and their counsel were present at the hearing despite representing that they were unavailable, they failed to show how they had been disadvantaged by the incomplete public records request, and they identified no additional evidence that they would have been able to present had they had more time to prepare. The court also expressed skepticism as to the probative value of the unrelated CUP decisions that the Tramontanas requested.

{¶ 14} Finally, as to the Tramontanas' request for recusal, the trial court found no conflict of interest because it was Vermilion Township—not the BZA—that had been sued; summary judgment had already been granted in favor of the township on the Tramontanas' request for money damages; the BZA was the required and proper body to hear the case; and the Tramontanas failed to show any prejudice, bias, or impropriety.

{¶ 15} The Tramontanas appealed the trial court's decision to this court under R.C. 2506.04 and they assign the following errors for our review.

8.

ASSIGNMENT OF ERROR NO. 1

THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANTS BY UPHOLDING THE BOARD OF ZONING APPEALS' GRANT OF A CONDITIONAL USE PERMIT TO APPELLANT [sic], VERMILION FISH AND GAME.

ASSIGNMENT OF ERROR NO. 2

THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANTS BY UPHOLDING THE BOARD OF ZONING APPEALS' REFUSAL TO GRANT APPELLANTS' REQUEST FOR A CONTINUANCE OF THE ADMINISTRATIVE PROCEEDINGS IN ORDER TO HAVE ADEQUATE TIME TO PREPARE AND PRODUCE EVIDENCE.

ASSIGNMENT OF ERROR NO. 3

THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANTS IN NOT FINDING THAT SOME OR ALL OF THE MEMBERS OF THE BOARD OF ZONING APPEALS HAD CONFLICTS OF INTERESTS WHICH SHOULD HAVE CAUSED THEM TO RECUSE THEMSELVES FROM THE DECISION TO GRANT A CONDITIONAL USE PERMIT TO APPELLANT [sic], VERMILION FISH AND GAME.

## II. Standard of Review

{¶ 16} Our review of an appeal of a decision of an administrative agency under R.C. 2506.01 is limited and is much narrower than the standard of review applied by the common pleas court. *Adams Quality Heating & Cooling v. Erie Cty. Health Dept.*, 6th Dist. Erie No. E-12-040, 2014-Ohio-2318, ¶ 10, citing *Henley v. Youngstown Bd. of Zoning Appeals,* 90 Ohio St.3d 142, 147, 735 N.E.2d 433 (2000). The common pleas court examines the evidence, including any new or additional evidence admitted under R.C. 2506.03. *Id.* Based on its review of the whole record, it then determines whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence. *Id.*

{¶ 17} By contrast, we review the judgment of the common pleas court only on questions of law. *Id.*; R.C. 2506.04. We will not weigh the evidence and we may not substitute our judgment for that of the administrative agency or the common pleas court, regardless of whether we may have arrived at a different conclusion. *Id.* Our role is limited to reviewing questions of law, employing a de novo standard, and determining whether the trial court abused its discretion in applying the law. *Id.* at ¶ 11. "Abuse of discretion" suggests more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Id.,* citing *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

10.

### III. Law and Analysis

{¶ 18} The Tramontanas assert that the trial court erred in affirming the BZA's decision. They argue that the trial court's judgment upholding the BZA decision was not supported by a preponderance of substantial, probative, and reliable evidence because VFG failed to establish requirements 1-4, and 7 of the zoning resolution. They also urge that they were denied due process by the BZA's refusal to continue the hearing to allow them sufficient time to prepare their evidence and that they were denied a fair hearing due to the BZA's refusal to recuse itself.

{¶ 19} VFG and the BZA address the Tramontanas' assignments of error, but VFG contends first that we are without jurisdiction to review the trial court judgment because the BZA decision upon which it was based did not constitute a final appealable order. Specifically, VFG argues that the BZA conditioned its approval of the CUP on VFG submitting—and the BZA approving—a design plan for a sound barrier. Because no plan has yet been submitted for the BZA's approval, VFG contends that the order granting the application for the CUP is not final and appealable.

{¶ 20} Under R.C. 2506.01(A), "every final order, adjudication, or decision of any officer, tribunal, authority, board, bureau, commission, department, or other division of any political subdivision of the state may be reviewed by the court of common pleas of the county in which the principal office of the political subdivision is located as provided in Chapter 2505. of the Revised Code." A "final order, adjudication, or decision" is "an order, adjudication, or decision that determines rights, duties, privileges, benefits, or legal

11.

relationships of a person * * *." R.C. 2506.01(C). R.C. 2505.02(B) provides that an order is final and subject to review when it is one of the following:

(1) An order that affects a substantial right in an action that in effect determines the action and prevents a judgment;

(2) An order that affects a substantial right made in a special proceeding or upon a summary application in an action after judgment;

(3) An order that vacates or sets aside a judgment or grants a new trial;

(4) An order that grants or denies a provisional remedy and to which both of the following apply:

(a) The order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy.

(b) The appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action.

* * *

{¶ 21} According to VFG, a "substantial right" of the Tramontanas has not been affected because the 300-yard range is not currently being used and cannot be used until the BZA approves plans for the sound barrier. It claims that it may be subjected to a second appeal following the BZA's approval of the design and specifications for the

12.

sound barrier. The Tramontanas respond to VFG's argument by insisting that the *trial court's* order was final and appealable, for the most part ignoring the issue of whether the administrative order upon which the trial court's order was based was actually final and appealable. They briefly argue that a contempt order or injunctive relief could remedy any failure by VFG to abide by the conditions set forth by the BZA.

{¶ 22} In urging that the BZA decision was not a final appealable order, VFG relies on the Ohio Supreme Court's decision in *State ex rel. Harpley Builders, Inc. v. City of Akron*, 62 Ohio St.3d 533, 584 N.E.2d 724 (1992), where the court held that the Akron Department of Planning and Urban Commission's decision to rescind its preliminary approval of a subdivision plan was not a final appealable order. In *Harpley Builders*, the planning commission had voted unanimously to preliminarily approve the subdivision plan, subject to a number of conditions. *Id*. at 533-534. In the meantime, numerous citizens expressed concern about the planned subdivision at a planning commission meeting. *Id*. at 534. The developer satisfied the originally-articulated conditions, however, the commission voted to rescind its preliminary approval based on noncompliance with a number of other subdivision regulations. *Id*. at 534. On appeal, the developer argued that the Akron Subdivision Plan and Regulations provided that the planning commission was required to grant final approval after the developer fulfilled all conditions provided in the preliminary approval. *Id*. at 535-536. The court of appeals held that the original grant of preliminary approval was a final appealable order that

13.

could not be reconsidered by the planning commission once the time for filing an appeal had passed. *Id.* at 536. The Supreme Court disagreed. *Id.* It explained:

> Preliminary approval is but one step in the approval process. Once preliminary approval is granted, the developer must fulfill the Planning Commission's conditions, and then submit a final plat for approval. * * * These further steps are persuasive evidence that the decision to grant preliminary approval is not final. Preliminary approval does not determine the final rights and duties of the developer until further action is taken. *Id.* at 537.

{¶ 23} *Harpley* is arguably distinguishable from the present case because the regulations at issue made clear that preliminary plans required final approval. But our decision in *Seckler v. Catawba Island Twp. Bd. of Zoning,* 6th Dist. Ottawa No. OT-82-18, 1986 WL 7134 (June 20, 1986), provides additional guidance.

{¶ 24} In *Seckler,* the Harbor Island Development Corp. sought a CUP from the Catawba Island Township BZA to build 56 boat docks to be part of the Nor Easter Country Club. *Id.* at *1. At a BZA meeting where that request for a CUP was discussed, a number of safety concerns were identified, and discussion of the application was tabled until the next month's meeting. *Id.* At the next BZA meeting, on February 17, 1983, the developer presented a plan for addressing some, but not all, of the safety concerns. *Id.* The BZA decided to approve the developer's application for the CUP, but it qualified its approval as follows:

14.

THAT THIS CONDITIONAL USE BE APPROVED WITH THE
APPROVAL TO TAKE EFFECT WHEN THE NOR EASTER CLUB
COMES UP WITH, AND IS READY TO IMPLEMENT, A PLAN TO
INSURE THE SAFE AND UNIMPEDED PASSAGE OF EMERGENCY
VEHICLES TO AND FROM HARBOR ISLAND, THIS PLAN TO BE
SATISFACTORY TO THE BOARD OF ZONING APPEALS.

* * * *Id.*

{¶ 25} The developer submitted a plan to the BZA, and at the March meeting, the BZA passed a resolution referencing that the CUP had been granted the prior month with conditions; a plan had been satisfactorily proposed by the developer; a permit would be issued without delay; and the permit would be issued subject to the previously-articulated conditions and was revocable if the conditions were not met at completion. *Id.* at *1-2.

{¶ 26} Harbor Island Association, Inc., and one of its members appealed the BZA's February decision. *Id.* at *2. Among appellants' arguments was that one of the BZA members had a conflict of interest based on his membership in the West Harbor Association, thus the decision of the BZA was void. *Id.* The trial court agreed and reversed the granting of the CUP. *Id.* The BZA appealed and argued, among other things, that the February decision was not a final appealable order. *Id.* We agreed and held that the common pleas court lacked jurisdiction to hear the appeal. *Id.* at *3-4. We reasoned:

15.

By its very terms the February 17, 1983 decision stated that it was not to take effect until the presentation of a safety plan which met the approval of the Board. Such plan was not presented until March 17, 1983 and the permit finally granted on that day. The whole merits of the request were finally decided on March 17, 1983. As of the February 17, 1983 decision the issue was "retained * * * to ascertain some matter of fact," that is, the sufficiency of the petitioner's safety plan upon which the final granting of the permit was made contingent. This was to be determined at a later time. The parties' rights were finally settled and no further proceedings on the matter were to be held after the March 17, 1983 granting of the permit. Furthermore, in a journal entry dated April 27, 1983, the Ottawa County Court of Common Pleas held that, "[n]o final appealable action was undertaken by the Board of Zoning Appeals of Catawba Island Township until March 17, 1983 * * *." *Id.* at *4.

{¶ 27} Although in the present case the BZA did not articulate that approval of the CUP would not take effect until VFG's plan was submitted and approved, it specifically prohibited VFG from operating the 300-yard range until a plan was devised, submitted to the BZA, approved by the BZA, and implemented by VFG. The conditions placed on the approval of the CUP are not self-effectuating; they require further action by both VFG and the BZA. The practical effect is that approval will not take effect until those conditions are met. Moreover, it is foreseeable that additional BZA proceedings will take

16.

place once VFG submits its plans, and additional review of the BZA's decision may be sought after VFG's plans are approved.

{¶ 28} We also question whether VFG has yet been issued the CUP. Sections 9.6 and 9.9 of the zoning resolution state:

> 9.6    Action by the Board of Zoning Appeals
>
> Within thirty (30) days after the date of the public hearing required in Section 9.30, the board shall take one of the following actions:
>
> 1. Approve issuance of the conditional use permit by making an affirmative finding writing that the proposed conditional use is to be located in a district wherein such use may be conditionally permitted. Such written finding may also prescribe supplementary conditions and safeguards as specified in Section 9.7. *Upon making an affirmative finding, the Board shall direct the Zoning Inspector to issue a conditional use permit for such use which shall list all conditions and safeguards specified by the board for approval.* (Emphasis added.)
>
> 9.9    Certificate for Conditional Use
>
> a. The Zoning Inspector shall upon his own initiative, or shall upon the request of any owner, issue a certificate for any conditional use deemed valid.

{¶ 29} There is nothing in the record to suggest that the zoning inspector has issued the CUP. While not addressed by any of the parties, we presume that this is

17.

because approval has not, in fact, taken effect given that VFG's plans for the sound barrier have not yet been submitted or approved.[3]

{¶ 30} We, therefore, find that under the facts of this case, the December 11, 2012 decision of the BZA was not a final appealable order, and the Erie County Court of Common Pleas lacked jurisdiction to consider the Tramontanas' appeal. Our decision renders the Tramontanas' assignments of error moot.

{¶ 31} CONCLUSION

{¶ 32} For the foregoing reasons, we reverse the October 22, 2014 judgment of the Erie County Court of Common Pleas and remand this matter for proceedings consistent with this decision. Pursuant to App.R. 24, the Tramontanas shall pay the costs of this appeal.

Judgment reversed.

---

[3] We note that Section 9.9 of the zoning resolution provides that a CUP will automatically expire "if such conditionally permitted use has not been instituted or utilized within one year of the date on which the permit was issued, or if for any reason such use shall cease for more than two years." The Tramontanas moved to stay execution of the CUP pending appeal to the common pleas court. It is not clear whether that motion was granted and, again, it is not clear from the record whether the zoning inspector has yet issued a CUP.

18.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.          _____
                                               JUDGE

Thomas J. Osowik, J. _____

James D. Jensen, J. _____      _____
CONCUR.                                              JUDGE

                                                _____
                                                 JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.sconet.state.oh.us/rod/newpdf/?source=6.